UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTI CLARK,

                Plaintiff,

    -against-

THE PORT AUTHORITY OF NEW YORK AND
NEW JERSEY,

                Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _3/26/2026_

24 Civ. 2790 (AT)

**<u>ORDER</u>**

ANALISA TORRES, District Judge:

Plaintiff, Christi Clark, brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.*, alleging that Defendant, the Port Authority of New York and New Jersey (the "Port Authority"), discriminated against her on the basis of her gender and disability and unlawfully retaliated against her. *See* Compl. at ¶¶ 50–92, ECF No. 1. Before the Court are the parties' cross-motions for summary judgment. *See* Pl. Mem., ECF No. 81; Def. Opp., ECF No. 88; Pl. Reply, ECF No. 92; Def. Mem., ECF No. 54; Pl. Opp., ECF No. 87; Def. Reply, ECF No. 91; *see also* Pl. 56.1, ECF No. 77;[1] Def. 56.1, ECF No. 65. Clark has represented to the Court multiple times that she "voluntarily withdraw[s] her claim for gender discrimination." Pl. Mem. at 4; Pl. Opp. at 4. The Court, therefore, will not address her gender discrimination claim under Title VII. For the reasons stated below, the Court grants the Port Authority's motion, denies Clark's motion, and finds that judgment should be entered in the Port Authority's favor.

---

[1] Citations to any paragraph of either party's Rule 56.1 statements encompass the opposing party's responses, which were filed along with those statements. *See* Pl. 56.1; Def. 56.1.

**BACKGROUND**

The Port Authority is a bi-state agency that operates "airports, ports, and terminals in the port of New York district." Def. Mem. at 2. In 2022, Christi Clark was employed in the Port Authority's Engineering Department, where she had worked since 2002. Def. Mem. at 2–3; Pl. 56.1 ¶¶ 1, 5.

In late 2022, the Engineering Department decided to create a new "Professional Services" unit. Def. Mem. at 3. Another employee, Angel Martinez, was "tasked with creating this [u]nit and enlisted [Clark's] assistance." *Id.* In November 2022, Martinez attempted to create a new position in the unit, titled "Senior Program Manager," and to promote Clark directly to that role using a process, "which allowed a department to circumvent creating a job bulletin and posting a position so any interested candidate could apply," but Martinez's request to do so was denied by the Human Resources Department. Def. Mem. at 3–4; Def. 56.1 ¶ 24; Martinez Decl. ¶¶ 15–20, ECF No. 53-3. Thereafter, the Port Authority announced and posted a position opening titled "Senior Program Manager, Professional Services" on February 14, 2023. Def. 56.1 ¶ 26. Multiple individuals applied, including Clark. *Id.* ¶ 27.

There is some dispute in the record concerning this process: Clark claims that in November 2022, she "was promoted to . . . the [r]ole" of Senior Program Manager in November 2022, but the Port Authority contends that she instead was an "acting manager" with similar responsibilities "for a few months before the position was permanently filled" and that she never received the title of "Senior Program Manager." Pl. Opp. at 5; Pl. Mem. at 5–6; Def. Mem. at 12; *see* Pl. 56.1 ¶¶ 9–15 (evidencing the dispute). The record reflects various titles that may have been used to refer to the work Clark performed from November 2022 through June 2023. *See, e.g.*, Pl. 56.1¶ 11–13. Nonetheless, Clark does not dispute that the position of "Senior Program Manager, Professional Services," was posted via

a "competitive process" that allowed multiple individuals to apply for the job and that it was eventually filled by someone else. *See* Def. 56.1 ¶¶ 24–29, 38.

Multiple Port Authority employees, including Clark, interviewed for the position. Def. 56.1 ¶ 27. Martinez and another employee, Simona Shapiro, interviewed Clark, and both rated Clark "not recommended." ECF No. 53-10 at 2, 10 (interview booklets for Clark). Documents in the record reflect that Martinez and Shapiro interviewed four other candidates who were also "not recommended," and that of the five candidates interviewed for Senior Program Manager, Clark achieved the highest score. *See* ECF No. 53-11 (applicant rating sheet).

Martinez, who was not deposed, states:

> During the interview, [Clark's] responses lacked detail, particularly in response to questions concerning the challenges pertaining to centralizing the new unit and the Board process.
>
> The Board process was a critical component to this role as it required the selected candidate to prepare and brief . . . the Chief Engineer[] on technical aspects of the required work underlying the contract that he then had to present to the Board . . . for their approval.
>
> [Clark] did not have any experience with the inner workings of the Board process, and she did not seem to have an appreciation of the work involved with [the Board process.].

Martinez Decl. ¶¶ 23–26.

Following her interview with Martinez and Shapiro, at the request of Martinez, Clark was asked to meet with Rizwan Baig, the Chief Engineer, and Amanda Rogers, the Deputy Chief Engineer. Def. 56.1 ¶¶ 6–7, 30.

Clark sharply criticizes the interview process. In addition to claiming that she was already promoted to the Senior Program Manager role before the interviews, she contends that her supervisor, Angel Martinez, told her prior to interviewing that she was the most qualified person for the position. Pl. 56.1 ¶¶ 10, 15. Clark states that the interview process "was 'phony' and that she felt a decision had

been made" to not hire her "before even interviewing, primarily because she is disabled and works from home." *Id.* ¶ 48.

At the time of the follow-up interview with Baig and Rogers, Rogers knew that Clark worked from home five days a week and that employees only worked from home full-time with a medical accommodation. *Id.* ¶ 32; Rogers Dep., 46:3–10, ECF No. 53-2. Clark has consistently represented that, during that interview, Rogers asked her "[h]ow would you make someone like me feel comfortable about somebody who works remote?" Pl. 56.1 ¶¶ 60, 72. Clark has likewise claimed that Rogers has a reputation for disapproving of employees who work from home, citing two depositions of other Port Authority employees. *See id.* ¶¶ 73–74; Ferrara Dep. at 31:24–35, ECF No. 58-6 (stating that "the rumor is that [Rogers] doesn't like" and is "not a fan" of "working from home"); Victors Dep. at 34:14–22, ECF No. 58-8 ("[Rogers] did make comments generally that she didn't believe anybody should be working from home.").

Following the interviews, Clark was not selected for the Senior Program Manager job. *See* Def. Mem. at 4. Instead, Martinez and Baig "discussed other candidates" who had interviewed for other positions at the Port Authority around the same time, and selected Hon Wah "Michael" Chan, allegedly on the basis that Chan had significant experience with "the Board process" from his previous work on other Port Authority projects. *See* Def. 56.1 ¶¶ 33, 35; Def. Opp. at 9. At about the same time, Chan had interviewed for another opening in the Engineering Department, and the Port Authority claims that his performance in the interview had impressed Baig. *See* Def. 56.1 ¶ 33. The parties dispute who precisely interviewed Chan, but they do not raise a significant dispute in the record as to whether Baig interviewed Chan. *See, e.g., id.* (Clark's response, citing Baig's deposition); Baig Dep. at 55:18–56:8, ECF No. 53-1 ("Q: [D]id Michael ever have a formal sit-down interview? [Baig]: Yes, he came to me, yes."); *see also* Baig Dep. at 56:14–23.

4

Chan was selected for the Senior Program Manager role on May 4, 2023.  Def. Opp. at 12; Martinez Decl. ¶ 33.  On June 2, 2023, Clark received a merit increase of $9,984 to her annual salary, and her title was changed to Senior Principal Engineer.  *See* Def. Opp. at 12; Martinez Decl. ¶ 35 (characterizing this as a "promot[ion]").  Clark characterizes this as a "demotion," on the grounds that she had already been promoted to Senior Program Manager in November 2022, her responsibilities changed, and staff who previously reported to her were now reporting to Chan, to whom she also reported, on internal organization charts.  *See* Pl. Reply at 4, 6.

Plaintiff filed "a complaint of discrimination with the Port Authority's Office of [Equal Employment Opportunity] Compliance" on June 26, 2023, alleging she was denied the Senior Program Manager job because of her gender and disability.  *See* Def. 56.1 ¶¶ 40–41.  Plaintiff also timely filed a complaint with the Equal Employment Opportunity Commission and received her right-to-sue letter on January 13, 2024.  *See* Compl. ¶ 4.  On April 12, 2024, Plaintiff commenced this action.  *Id.*  Both parties move for summary judgment on all claims.  *See* Def. Mot., ECF No. 51; Pl. Mot., ECF No. 57.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986).  A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact by citing particular evidence in the record.  Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323–24; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002).  If the nonmoving party has the ultimate burden of proof at trial, the movant may also satisfy its burden by demonstrating

that the nonmovant cannot produce admissible evidence that supports the existence of a triable issue of fact. *Celotex*, 477 U.S. at 322–23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute for trial. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo*, 315 F.3d at 105. "Although a party opposing summary judgment need not prove its evidence in a form admissible at trial or under the evidentiary standard which will be required, it must show facts sufficient to enable a reasonable mind to conclude that a material dispute of fact exists." *Healey v. Chelsea Res. Ltd.*, 736 F. Supp. 488, 491–92 (S.D.N.Y. 1990) (citation omitted). In deciding the motion, the Court views the record in the light most favorable to the nonmoving party. *Koch*, 287 F.3d at 165.

The Court must be "cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question," and must "carefully scrutinize[]" the nonmovant's affidavits and depositions for "circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citation omitted). Summary judgment is nonetheless warranted if the plaintiff "relies on conclusory allegations of discrimination and the employer provides a legitimate rationale for its conduct." *Figueroa v. N.Y. Health & Hosps. Corp.*, 500 F. Supp. 2d 224, 228 (S.D.N.Y. 2007) (internal quotation marks and citation omitted). To defeat summary judgment, the opposing party must set forth "concrete evidence from which a reasonable juror could return a verdict in [her] favor." *Anderson*, 477 U.S. at 256.

## DISCUSSION

I.    <u>ADA Standard</u>

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on

the basis of disability." 42 U.S.C. § 12112(a).  Claims alleging discrimination under the ADA are evaluated using the *McDonnell Douglas* burden-shifting framework.  *See McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under this framework, a plaintiff must first establish a "prima facie case" of discrimination, which an employer may rebut by introducing "admissible evidence [of] a legitimate non-discriminatory reason" for the allegedly discriminatory action.  *McBride*, 583 F.3d at 96.  If the defendant successfully rebuts the prima facie case, the plaintiff must "produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Id.*  "Showing pretext requires more than simply some evidence"; it "instead requires sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Verne v. N.Y.C. Dep't of Educ.*, 697 F. Supp. 3d 30, 47 (S.D.N.Y. 2023) (internal quotation marks and citation omitted).

To establish a prima facie case under the ADA, Clark "must show by a preponderance of the evidence that: '(1) [her] employer is subject to the ADA; (2) [s]he was disabled within the meaning of the ADA; (3) [s]he was otherwise qualified to perform the essential functions of [Senior Program Manager], with or without reasonable accommodation; and (4) [s]he suffered adverse employment action because of [her] disability." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (quoting *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001)).

The *McDonnell Douglas* framework also applies to claims of retaliation under the ADA, where a plaintiff must first establish a prima facie case by showing:  (1) "a plaintiff was engaged in protected activity"; (2) the defendant knew the "plaintiff was involved in protected activity"; (3) the plaintiff suffered an adverse action; and (4) a "causal connection exists between the protected activity and the adverse action." *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) (quoting *Natofsky v. City of New*

*York*, 921 F.3d 337, 353 (2d Cir. 2019)).

II.    Discrimination

Clark's disability discrimination claim fails because the Port Authority has introduced admissible evidence of a non-discriminatory reason for its failure to promote Clark,[2] which Clark has not successfully rebutted.  Whatever the strength of Clark's prima facie case, the Port Authority has shown that there is no genuine dispute that Clark was ultimately not selected for the Senior Program Manager position due to her interview performance and her lack of experience with a critical component of the position.  And there is insufficient evidence to support Clark's argument that a reasonable jury could find that this was a pretext for discrimination.  *See Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 187–88 (2d Cir. 2006) (resolving a discrimination claim under the *McDonnell Douglas* framework without analyzing the existence of a prima facie case).

First, the Port Authority has introduced abundant evidence that Clark was initially not recommended for the position because of her lackluster interview performance in March 2023.  *See* Def. 56.1 ¶ 29; ECF No. 53-10 (interview booklet).  Although Clark is correct that she scored higher than other candidates, *see* Def. 56.1 ¶ 29, Martinez and Shapiro still felt that she lacked experience that they believed was crucial for the job.  *See, e.g.*, Martinez Aff. ¶¶ 23–26 (stating, for example, that Clark's responses "lacked detail" as to the "Board process," a "critical component [of the] role").

---

[2] The Court is aware that Clark claims that she had already been promoted and that the Port Authority's decision was thus not a failure to promote, but a decision to demote her.  *See, e.g.*, Def. 56.1 ¶ 39.  The Court nonetheless will refer to the Port Authority's action as a refusal of promotion for ease of discussion.  Having reviewed the record, the Court notes that Clark does not dispute that the Senior Program Manager position was posted for applications in January 2023, that multiple individuals, including Clark, applied for that role, and that Chan was selected.  *Id.* ¶¶ 23–24, 27, 31, 33.  There is thus no triable issue of fact as to whether the Senior Program Manager job was announced and filled by someone other than Clark—at most, the evidence suggests that Clark was acting in a similar or potentially even identical capacity prior to the formally announced role being filled, but she was not officially serving in that position.  In any event, the characterization of the Port Authority's actions as a "promotion" or "demotion" is irrelevant to the Court's analysis of whether those actions were discriminatory, as the actions were in either case "adverse" to Clark, *Tafolla*, 80 F.4th at 125, and the Court discusses the changes to her responsibilities in the portion of this opinion addressing Clark's retaliation claim.

Indeed, Martinez and Shapiro's interview evaluations each labeled Clark "not recommended."  ECF No. 53-10 at 2, 10.  When contemporaneous evidence supports an employer's assessment of an applicant's qualification for a position, courts will not second-guess an employer's weighing of candidates' relative qualifications absent other evidence suggesting discrimination.  *See, e.g., Syken v. New York*, 824 F. App'x 84, 85–86 (2d Cir. 2020) ("Our role is to prevent unlawful hiring practices, not to act as a super personnel department." (quoting *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001)).

Clark has not "carr[ied] [her] burden of persuasion" that this reason is pretextual.  *McBride*, 583 F.3d at 96.  First, the strongest evidence supporting her claim consists of comments that Rogers allegedly made during her second interview concerning individuals who work from home.  *See, e.g.*, Pl. 56.1 ¶ 60.  But that second interview occurred in May, about two months after her initial interview, where Martinez, not Rogers, first determined that Clark did not have the required experience.  Clark has not pointed to any evidence suggesting that Martinez's evaluation of her initial interview was influenced by a discriminatory motive.  Rather, much, if not all, of her evidence concerns Rogers' actions and beliefs, *see, e.g.*, Pl. 56.1 ¶¶ 60–63, 72–75, which are not relevant to Martinez's decision to consider candidates other than Clark once he decided against recommending her, or the Martinez and Baig's decision to ultimately hire Chan.  *See* Def. 56.1 ¶ 33 (claiming that it was Baig and Martinez who discussed Chan).

Moreover, the Court rejects Clark's characterization of Chan's qualifications as "vague" or "conclusory."  Pl. Reply at 2–3.  Both Baig and Rogers provided detailed testimony concerning what "the Board process" entails and why Chan's qualifications were strong, *see* Rogers Dep. at 31:4–34:21; Baig Dep. 35:1–19, 55:1–56:25, and Chan's affidavit describes his prior experience developing "a board management process" in the Engineering Department, which was valuable for the new role, Chan

9

Aff. ¶¶ 7–13, ECF No. 67; Martinez Decl. ¶ 24.  Indeed, in *Pathare v. Klein*, the Second Circuit found that the plaintiffs failed to raise a genuine issue as to whether a defendant's proffered motive was pretextual even where the defendant had promoted a candidate with "a lower interview ranking than other candidates" because the promoted candidate had relevant experience and excellent prior performance—"appropriate bases for promotion decisions."  *Pathare v. Klein*, 347 F. App'x 646, 648 (2d Cir. 2009).

Clark, therefore, has not shown that the Port Authority's reasons for not promoting her to Senior Program Manager were pretextual.  A comparison of cases analyzing whether plaintiffs have met their burden is helpful.  In *Howley v. Town of Stratford*, 217 F.3d 141, 151–52 (2d Cir. 2000), the Second Circuit found evidence of pretext where (i) an employer's proffered reason "had not been applied uniformly" and was "relaxed for two men" in similar circumstances, (ii) the employer had not uniformly followed the recommendations that it used to justify its failure to promote a plaintiff, and (iii) the evidence showed that the employer "made no effort to verify [the plaintiff's] actual qualifications."  In *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 97–98 (2d Cir. 1999), the Second Circuit found that a plaintiff had sufficiently shown pretext where the evidence varied as to whether her qualifications were sufficient and the employer's proffered reasons for its discriminatory action were inconsistent.  By contrast, in *Moore v. Metropolitan Transit Auth.*, 999 F. Supp. 2d 482, 495–96 (S.D.N.Y. 2013), the district court held that a plaintiff's allegations that he had "performed well in his interview and was more qualified than the officers selected for further consideration" were insufficient evidence of pretext to defeat summary judgment where the "discrepancy in qualifications ignored by an employer" was only slight.  (citations omitted).

No such inconsistencies or discrepancies exist in the record in this case.  Accordingly, the Port Authority is entitled to summary judgment on Clark's disability discrimination claim.

III.    Retaliation

Nor is there a triable issue of fact with respect to Clark's retaliation claim. *See Tafolla*, 80 F.4th at 125. The protected activity supporting Clark's retaliation claim is the filing of a discrimination complaint with the Port Authority compliance office on June 26, 2023, and the fact that Clark "raised discrimination concerns" about three days beforehand. *See* Pl. 56.1 ¶¶ 99–100; Def. Mem. at 14. But the decision to hire Chan as Senior Program Manager—and, therefore, the decision not to hire Clark— was made by May 4, 2023, well before she made her internal complaint. *See* Def. Mem. at 14; Pl. Opp. at 17–18; Martinez Decl. ¶ 33. Thus, the only adverse actions which could plausibly be related to Clark's protected activity are changes in her work responsibilities occurring after June 23, 2023, and her allegation that she was "belittled." *See* Pl. Opp. at 18; Pl. Reply at 3–4; Pl. 56.1 ¶¶ 97, 102.

As to the first, Clark has not introduced any evidence that the changes in her work responsibilities were related to her protected activity, rather than to the Port Authority's decision to promote Chan, rather than Clark.[3] In fact, Clark undermines her own case by acknowledging that, prior to Chan's promotion becoming official, she was acting in the position that he later assumed. *See* Pl. Opp. at 6. Her sole argument is that the Port Authority's organizational charts changed, to the effect that staff who reported to her on a chart dated June 12, 2023, later reported directly to Chan (to whom Clark also reported) on a subsequent chart dated June 26. *See* Pl. 56.1 ¶¶ 97, 102; Clark Dep. at 202:12– 20, ECF No. 53-5. But temporal proximity, without more, is insufficient to withstand summary

---

[3] Clark alleges that she was "again denied the opportunity to be promoted" into the Senior Program Manager role in 2024 and that the role "was explicitly changed to prohibit employees who work remotely from applying." *See* Pl. Opp. at 18; *see generally* Pl. 56.1 ¶¶ 115–45. The Court agrees with the Port Authority that Clark's claims concerning the subsequent opening for the position in 2024 are not the proper subject for this summary judgment briefing. *See* Def. Opp. at 7. Clark's complaint contains no information concerning her 2024 application, and there is no indication that there has been any discovery on that allegation. *See id.* ("Plaintiff's counsel previously represented at a court conference [before the Hon. Katharine H. Parker] on August 12, 2025, that plaintiff's second application for the Senior Program Manager position is not a part of this case and may be the subject of a new lawsuit."). The Court, therefore, strikes paragraphs 115 through 145 of Clark's 56.1 Statement and expresses no opinion on claims related to the Port Authority's failure to promote Clark in 2024. *See* Pl. 56.1 ¶¶ 115–145.

judgment in this case. *See Sivio v. Village Care Max*, 436 F. Supp. 3d 778, 801–02 (S.D.N.Y. 2020).

Second, belittling an employee does not constitute adverse action. *See Tafolla*, 80 F.4th at 125. Even crediting Clark's deposition testimony, *see* Clark Dep. at 202:22–207:2, the evidence only shows, at best, that Baig lost his temper during a meeting and accused Clark of "pointing the finger at other people all the time and saying it's always someone else's fault." *Id.* at 204:6–12; *see also id.* 203:21–24. Although such behavior may be uncivil and potentially relevant to assessing whether some other adverse action was taken for discriminatory motives, it does not alone rise to the level of adverse action necessary to sustain a retaliation claim. *See, e.g.*, *Ziyan Shi v. N.Y. Dep't of State, Div. of Licensing Servs.*, 393 F. Supp. 3d 329, 337–39 (S.D.N.Y. 2019) (finding allegations of a changed workload and "yell[ing] and scream[ing]" insufficient to withstand a motion to dismiss on a Title VII retaliation claim).

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Port Authority's motion for summary judgment and DENIES Clark's motion. The Port Authority is entitled to judgment in its favor on all claims, except for Clark's gender discrimination claim. Because Clark has proceeded through fact discovery in this action before withdrawing her gender discrimination claim, the Court dismisses that claim with prejudice under Federal Rule of Civil Procedure 41(a)(2). The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 51 and 57, and close the case.

SO ORDERED.

Dated: March 26, 2026
New York, New York

_____
ANALISA TORRES
United States District Judge

12